# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Kenneth Macek, Matthew Harner, Avi Setton, Lionel Alicea, and Robert Walker, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>DraftKings, Inc.; Crown PA Gaming Inc. d/b/a DraftKings; Golden Nugget Online Gaming LLC,<br><br>    Defendants. | Civil Action No. 2:25-cv-03632-JFL<br><br> Judge Joseph F. Leeson, Jr. |

## DEFENDANTS' REPLY IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

7948076v.1

**TABLE OF CONTENTS**

**Page(s)**

I.   INTRODUCTION ...........................................................................................................1

II.  ARGUMENT .................................................................................................................1

    A.   The Intentional Misrepresentation Claim (Count Two) Fails Under Rule 9(b). ..................................................................................................................1

    B.   The UTPCPL Claims (Counts One, Three, Four, Six) Should Be Dismissed. ........................................................................................................3

        1.   Plaintiffs' Nondisclosure Theory Fails. ........................................................3

        2.   Plaintiffs Have Not Identified Which Advertisements They Saw. ..............3

        3.   The Advertisements for the Promotions Were Not Deceptive. ...................5

        4.   Plaintiffs Have Not Pled a Cognizable Injury or Causation. .......................6

        5.   Count Three Is Based on Non-Actionable Puffery. .....................................7

    C.   The Unjust Enrichment Claim (Count Seven) Should Be Dismissed. ....................8

    D.   Plaintiffs Lack Standing. ..........................................................................................8

        1.   Plaintiffs Lack Standing to Assert Claims Under the Laws of States Where No Named Plaintiff Is Located or Suffered Injury (Count One). ..........................................................................................................8

        2.   Plaintiffs Lack Standing to Assert Claims Based on the No Sweat Promotion (Count Three). ............................................................................9

    E.   Plaintiffs' Group Allegations Are Improper. .........................................................10

III. CONCLUSION .............................................................................................................10

7948076v.1

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Antar v. BetMGM, LLC et al.*,
  No. 24-1364, 2025 WL 1219316 (3d Cir. Apr. 28, 2025) ............................................ 1, 6, 7, 8

*In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Pracs. Litig.*,
  701 F. Supp. 2d 356 (E.D.N.Y. 2010) ................................................................................... 9

*Benner v. Bank of Am., N.A.*,
  917 F. Supp. 2d 338 (E.D. Pa. 2013) ..................................................................................... 7

*Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*,
  472 F. Supp. 3d 142 (W.D. Pa. 2020) ................................................................................... 4

*Binakonsky v. JM Brands, Inc.*,
  No. 2:21-CV-444-NR, 2022 WL 2757674 (W.D. Pa. July 14, 2022) ............................... 5, 10

*Commonwealth by Shapiro v. Golden Gate Nat'l Senior Care LLC*,
  194 A.3d 1010 (2018) ........................................................................................................... 4

*Davis v. Hanna Holdings, Inc.*,
  771 F. Supp. 3d 552 (E.D. Pa. 2025) ..................................................................................... 9

*Doe A.F. v. Lyft, Inc.*,
  No. CV 23-3990-KSM, 2024 WL 3497886 (E.D. Pa. July 19, 2024) .................................... 8

*Doug Grant, Inc. v. Greate Bay Casino Corp.*,
  232 F.3d 173 (3d Cir. 2000) .................................................................................................. 6

*Dreibelbis v. Scholton*,
  274 F. App'x 183 (3d Cir. 2008) ........................................................................................... 7

*Fed. Trade Comm'n v. DIRECTV, Inc.*,
  No. 15-CV-01129-HSG, 2018 WL 3911196 (N.D. Cal. Aug. 16, 2018) ........................... 3, 5

*Fusco v. Uber Techs., Inc.*,
  No. 17-00036, 2018 WL 3618232 (E.D. Pa. July 27, 2018) ................................................. 8

*Garner v. Glob. Plasma Sols. Inc.*,
  590 F. Supp. 3d 738 (D. Del. 2022) ..................................................................................... 10

*In re Generic Pharms. Pricing Antitrust Litig.*,
  368 F. Supp. 3d 814 (E.D. Pa. 2019) ..................................................................................... 9

7948076v.1

*In re Glucagon-Like Peptide-1 Receptor Agonists (GLP-1 RAS) Prods. Liab. Litig.*,
 No. 24-MD-3094, 2025 WL 2394047 (E.D. Pa. Aug. 15, 2025) ............................................. 2

*Goodman v. Intervet, Inc.*,
 No. 2:22-CV-02926 (WJM), 2023 WL 5127336 (D.N.J. Aug. 10, 2023) ................................ 2

*Hakimoglu v. Trump Taj Mahal Assocs.*,
 70 F.3d 291 (3d Cir. 1995) ....................................................................................................... 6

*Halpern v. Ricoh U.S.A., Inc.*,
 299 A.3d 1023 (Pa. 2023), *appeal granted*, 314 A.3d 513 (Pa. 2024) .................................... 3

*Landau v. Reliance Standard Life Ins. Co.*,
 No. CIV. A. 98–903, 1999 WL 46585 (E.D. Pa. Jan. 13, 1999) ............................................... 6

*Landau v. Viridian Energy PA LLC*,
 223 F. Supp. 3d 401 (E.D. Pa. 2016) ........................................................................................ 5

*Mayor & City Council of Baltimore v. Merck Sharp & Dohme Corp.*,
 No. CV 23-828, 2023 WL 8018980 (E.D. Pa. Nov. 20, 2023).................................................. 9

*McLaughlin v. Bayer Corp.*,
 172 F. Supp. 3d 804 (E.D. Pa. 2016) .................................................................................... 1, 2

*McLean v. Big Lots Inc.*,
 542 F. Supp. 3d 343 (W.D. Pa. 2021) ....................................................................................... 5

*MDNet, Inc. v. Pharmacia Corp.*,
 147 F. App'x 239 (3d Cir. 2005) .............................................................................................. 2

*Monilaw v. Mercedes Benz Grp. AG*,
 No. 1:24-CV-00608-TWT, 2025 WL 2163761 (N.D. Ga. July 30, 2025) ............................... 3

*In re: Niaspan Antitrust Litig.*,
 No. 13-MD-2460, 2015 WL 8150588 (E.D. Pa. Dec. 8, 2015) ................................................ 9

*Parnell v. FanDuel, Inc.*,
 591 S.W.3d 315 (Ark. 2019) ..................................................................................................... 6

*Penn. v. Navient Corp.*,
 354 F. Supp. 3d 529 (M.D. Pa. 2018) *aff'd,* 967 F.3d 273 (3d Cir. 2020) .............................. 6

*Perri v. Prestigious Homes, Inc.*,
 No. L-4169-08, 2012 WL 95564 (N.J. Super. Ct. App. Div. Jan. 13, 2012) ............................ 7

*Ranalli v. Etsy.com, LLC*,
 570 F. Supp. 3d 301 (W.D. Pa. 2021) ....................................................................................... 5


*Scanlon v. DraftKings, Inc.*,
   No. 2484CV01099-BLS2 (Mass. Super. Ct. Aug. 21, 2024) ...................................................6

*Wright v. Publishers Clearing House, Inc.*,
   439 F. Supp. 3d 102 (E.D.N.Y. 2020) ..................................................................................6

**Statutes & Rules**

73 P.S. § 201-2(4) ........................................................................................................................4

Fed. R. Civ. P. 9(b) ...................................................................................................................1, 2

I.  **INTRODUCTION**

Plaintiffs have withdrawn two of their intentional misrepresentation claims (Counts Five and Six) because they are time-barred as to all Plaintiffs, along with their request for injunctive relief. Their opposition to the motion does not save the remaining claims. The allegations supporting Plaintiffs' only remaining intentional misrepresentation claim (Count Two) fall far short of satisfying Rule 9(b). Plaintiffs' UTPCPL claims fail for several reasons, including because Defendants did not have a legal duty to disclose that could support a nondisclosure theory of liability, a point which Plaintiffs do not refute. Plaintiffs are also unable to establish an ascertainable loss under the Third Circuit's "extremely persuasive" decision in *Antar*. For these and other reasons discussed below, all claims should be dismissed as a matter of law.

II.  **ARGUMENT**

   A.   **The Intentional Misrepresentation Claim (Count Two) Fails Under Rule 9(b).**

Plaintiffs' remaining intentional misrepresentation claim (Count Two as to Harner and Alicea)[1] does not comply with Rule 9(b), which Plaintiffs admit applies. As Defendants explained in their opening brief ("Mem."), it is not enough to allege that there *were advertisements* that *were deceptive*; Plaintiffs must allege the "precise source" of the misrepresentations they actually saw, when they were made, and "the circumstances under which" they encountered them. *McLaughlin v. Bayer Corp.*, 172 F. Supp. 3d 804, 829 (E.D. Pa. 2016); Mem. at 30-31. Critically, Plaintiffs concede that Defendants' advertisements were *not* uniform, and that some of the "statements in Defendants' advertisements were accompanied by some of the terms[.]" Resp. at 24.[2]

---

[1] Plaintiffs concede Count Two is time-barred as to Macek, Setton, and Walker, and Counts Five and Six are time-barred as to all Plaintiffs. Response ("Resp.") at 43, n.22; *see also id*. at 18.

[2] Plaintiffs mischaracterize Rule 9(b) as requiring them only to "'place Defendants on notice of' what misrepresentations [are] challenged[.]" Resp. at 45 (quoting *In re Glucagon-Like Peptide-1*

Plaintiffs Harner and Alicea have not made the requisite allegations. Harner *never* alleges *where* he saw the purported Casino Promotion advertisements, or even *which Defendant* promoted them. *See* Compl. ¶ 38; *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005) (noting that the complaint must "specify[] the allegations of fraud applying to each defendant"). Alicia only vaguely alleges that he saw Casino Promotion advertisements via email and social media. *See* Compl. ¶ 40. Neither Plaintiff alleges the content of the advertisements they supposedly saw.³ Plaintiffs assert that Rule 9(b)'s requirements are relaxed because in their view, what advertisements they saw is within Defendants' knowledge. Resp. at 17. In fact, which advertisements Plaintiffs saw and when is necessarily and uniquely in *their* knowledge. Moreover, Plaintiffs allege that they relied on advertisements that were emailed to them and are presumably in their possession, yet they do not identify even those emails. *See, e.g.*, Compl. ¶¶ 36 (New Customer Promotion), 40 (Casino Promotion), 148 (Risk-Free Promotion).

---

*Receptor Agonists (GLP-1 RAS) Prods. Liab. Litig.*, No. 24-MD-3094, 2025 WL 2394047, at *22 (E.D. Pa. Aug. 15, 2025)). *In re Glucagon* does not support that view. There, the court upheld a master MDL complaint that identified the alleged misrepresentations and *was to be followed* by individual pleadings by each plaintiff "add[ing] additional allegations . . . as appropriate." *Id.* at *2. The court did not address the sufficiency of each plaintiff's specific allegations. *Id.* at *8, *22 n.19. Plaintiffs also mistakenly rely on *Goodman v. Intervet, Inc.*, No. 2:22-CV-02926 (WJM), 2023 WL 5127336, at *3 (D.N.J. Aug. 10, 2023), where the court upheld portions of a complaint that alleged "specific misrepresentations on various portions of Home Again's website, the renewal reminder email, and/or enrollment forms" because the plaintiffs alleged that they personally saw and relied on *those* statements. *See, e.g., id.* at *4 (upholding claim based on "specific misleading communication identified in ¶ 43 that Plaintiffs purport personally seeing upon visiting Home Again's website" and denying claims based on "'other misrepresentations on the website' or 'marketing materials' that are not specifically identified or described in the SAC").

³ In *McLaughlin*, the court dismissed an advertising-based fraud claim for lack of particularity where the complaint: (1) "plead[ed] the substance of the alleged [misrepresentations], explicitly quoting most of them"; (2) "allege[d] the mode of communication for each [misrepresentation] (e.g., advertisement, website, brochure)"; and (3) "suggest[ed] that Plaintiffs encountered the [misrepresentations] either on the internet, in their physicians' offices, on Bayer's website, or through Bayer's advertising[.]" 172 F. Supp. at 823–24, 829. The court nevertheless dismissed the complaint because it "fails to allege any of the circumstances under which each Plaintiff read or saw each particular [misrepresentation][.]" *Id.* at 823, 829 (emphasis in original).

**B.     The UTPCPL Claims (Counts One, Three, Four, Six) Should Be Dismissed.**

**1.     Plaintiffs' Nondisclosure Theory Fails.**

Plaintiffs do not refute that Defendants have no common law duty to disclose on the face of the advertisements the *full* terms of the Promotions. *See* Resp. at 20-21, n.11. As such, they cannot maintain a nondisclosure theory – their primary theory of liability[4] – under the UTPCPL. *Halpern v. Ricoh U.S.A., Inc.*, 299 A.3d 1023, 1029 (Pa. 2023), *appeal granted*, 314 A.3d 513 (Pa. 2024) (dismissing UTPCPL claim because vendor's failure to disclose a product defect could not be deceptive where consumer did not plead that vendor had a duty to disclose the defect). Another district court recently applied *Halpern* on this very issue. *Monilaw v. Mercedes Benz Grp. AG*, No. 1:24-CV-00608-TWT, 2025 WL 2163761, at *12 (N.D. Ga. July 30, 2025) (analyzing on motion to dismiss whether defendant had a duty to disclose that could support nondisclosure theory under the UTPCPL). This Court should do the same and dismiss the UTPCPL claims.

**2.     Plaintiffs Have Not Identified Which Advertisements They Saw.**

Plaintiffs fail to allege with *any* specificity where they saw the alleged advertisements, when they saw them, or what they said, and their Response cannot show otherwise. *See* Mem. at 21-26. Plaintiffs must meet this requirement; it is not enough to allege that advertisements promulgated by two different defendants on billboards, television, social media, and email over a period of five years are "uniform" when they clearly are not. Resp. at 1; *see Fed. Trade Comm'n v. DIRECTV, Inc.*, No. 15-CV-01129-HSG, 2018 WL 3911196, at *15, *16 (N.D. Cal. Aug. 16, 2018) (where "several years' worth of advertisements . . . took different forms" with different "manner of disclosures," including some that "disclose additional terms . . . [in] the disclosure

---

[4] Plaintiffs' claim that affirmative misrepresentations are the crux of their case (Resp. at 20-21, n.11) is belied by what they have pled. *See, e.g.*, Compl. ¶¶ 180, 193, 196, 204, 236, 260, 277.

block," court rejected characterization of advertisements as creating "uniform net impression").[5]

Plaintiffs' Complaint is rife with contradictions that render even their scant allegations about which advertisements they saw implausible. For example, Plaintiffs allege "Risk Free" advertisements that they claim are from 2025, even though they allege that DraftKings stopped using that term in 2022. Mem. at 23. They allege "No Sweat" advertisements even though no Plaintiff alleges he saw advertisements with that language, and they include many "representative" advertisements that allegedly ran well before or after the time periods in which the Plaintiffs allegedly entered the Promotions. *Id*. at 22-26; *see Bessemer Sys. Fed. Credit Union v. Fiserv Sols., LLC*, 472 F. Supp. 3d 142, 180 (W.D. Pa. 2020) (dismissing UTPCPL claims as implausible where "Bessemer's citations to the advertisements at issue are all dated well after the Master Agreement was entered into . . ."). Plaintiffs' assertions that they relied on advertisements "substantially similar" to those in the Complaint are also implausible given the significant differences across those advertisements. Mem. at 22-26. Such contradictory and conclusory allegations are insufficient to survive a motion to dismiss.

Plaintiffs argue in their Response that they need only identify misleading *statements*, not specific advertisements. Resp. at 15. However, their UTPCPL claims relate exclusively to Defendants' *advertisements*. *See, e.g.*, Compl. ¶¶ 237 ("These advertisements created a likelihood of confus[ing] and misunderstanding among consumers."); 261 (DraftKings' "advertisements represent that its promotion contains characteristics that it does not have.").[6] Plaintiffs therefore

---

[5] Plaintiffs rely heavily on *Commonw. by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1016 (Pa. 2018), a case brought by the Office of the Attorney General ("OAG"), not individual plaintiffs. Because the allegations in the OAG's complaint were "based upon on its investigation and the facts derived from it[,]" including "interviews with family members of patients, confidential informants and government inspectors[,]" the court was satisfied that the claims "are not baseless subterfuge." *Id.* at 1030. None of those factors are present here.

[6] These allegations invoke 73 P.S. § 201-2(4), subsections (v) and (xxi) (the catch-all provision), respectively. Plaintiffs concede that subsection (iv) applies only to advertising. *See* Resp. at 15.

must provide fair notice of what those advertisements say. They plainly have not done so.

### 3. The Advertisements for the Promotions Were Not Deceptive.

Plaintiffs not only admit that some of the advertisements disclose material terms and link to the full terms of the Promotions, they have also ***altered*** the disclosures quoted in the Response, affirmatively *removing* the bold emphasis in which the hyperlinks were actually presented. *Compare* Resp. at 26-27 (quoting Fig. 5 as follows: "Promo View Full Terms") *with* Compl. ¶ 164, Fig. 5 ("Promo **View Full Terms**"), *and* Resp. at 29 (quoting Fig. 12 as follows: "*View Promotions Terms") *with* Compl. ¶ 190, Fig. 12 ("**\*View Promotion Terms**"). Advertisements disclosing the full terms and conditions of the Promotions (including through boldface links to them) "*cannot* be considered deceptive." *McLean v. Big Lots Inc.*, 542 F. Supp. 3d 343, 352 (W.D. Pa. 2021) (granting motion to dismiss UTPCPL claim where defendant disclosed all relevant information relating to the purchase) (emphasis added); *Ranalli v. Etsy.com, LLC*, 570 F. Supp. 3d 301, 307 n.5 (W.D. Pa. 2021) (finding "no factual allegations" to support deceptive conduct under UTPCPL where "Plaintiff alleged he did not realize he was charged a sales tax after the purchase, but not that he was not shown tax information prior to making his purchase.");[7] *see also DIRECTV, Inc.*, 2018 WL 3911196, at *9 ("Because the advertisement adequately discloses the details that the FTC claims were omitted due to a lack of prominent disclosure, the net impression of the advertisement on its face would not be likely to mislead a reasonable consumer").[8]

---

[7] Plaintiffs cast *McLean* and *Ranalli* aside because they concern "tax collectability." Resp. at 22, n.12. However, these cases specifically addressed whether advertising statements were deceptive, and both courts granted motions to dismiss due to the defendants' disclosures.

[8] None of the UTPCPL cases Plaintiffs rely on (Resp. at 20-21) involved advertising disclosures, and they are otherwise distinguishable. *See Landau v. Viridian Energy PA LLC*, 223 F. Supp. 3d 401, 419 (E.D. Pa. 2016) (holding that defendant's misleading verbal assurances about affordability were not corrected by fine print disclaimers in written agreement where agreement itself contained further misleading assurances about affordability); *Binakonsky v. JM Brands, Inc.*, No. 2:21-CV-444-NR, 2022 WL 2757674, at *4 (W.D. Pa. July 14, 2022) (concerning product

### 4. Plaintiffs Have Not Pled a Cognizable Injury or Causation.

The Third Circuit, in *Antar v. BetMGM, LLC et al.*, No. 24-1364, 2025 WL 1219316, at *3 (3d Cir. Apr. 28, 2025), made clear that Plaintiffs cannot plead an "ascertainable loss" of money or property. *Id.* (affirming dismissal of New Jersey consumer protection claim). While unpublished, *Antar* is still "extremely persuasive." *Landau v. Reliance Standard Life Ins. Co.*, No. CIV. A. 98–903, 1999 WL 46585, at *3 n.2 (E.D. Pa. Jan. 13, 1999). The court's reasoning in *Antar* also aligns with binding Third Circuit authority, rejecting gambling loss claims at the pleading stage. *See, e.g.*, *Hakimoglu v. Trump Taj Mahal Assocs.*, 70 F.3d 291, 294 (3d Cir. 1995); *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 188–89 (3d Cir. 2000).

Under *Antar*, Plaintiffs did not and cannot plead ascertainable loss. Gambling losses are not "quantifiable or measurable" because they "present almost metaphysical problems of proximate causation." *Antar*, 2025 WL 1219316, at *3 (internal quotations and citations omitted). Plaintiffs argue that, as to the Casino Promotion, they sustained alleged out-of-pocket damages (the amount they allegedly deposited and lost) and benefit-of-the-bargain damages (the matching funds they were allegedly promised but did not receive). Resp. at 35. But depositing money alone does not cause damages, as users could have withdrawn any deposits before making any bets.[9] Any losses Plaintiffs allegedly suffered thereafter (including the amount they allegedly deposited

---

labeling). Product labels are not analogous to terms of a promotion or contest. *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 119 (E.D.N.Y. 2020) ("[I]t is much more reasonable to expect a contest participant to observe the official rules of that contest than to expect a consumer to read the obscured fine print on the back of a tangible good."). Plaintiffs also misleadingly quote language from *Pa. v. Navient Corp.*, 354 F. Supp. 3d 529, 562–64 (M.D. Pa. 2018) *aff'd,* 967 F.3d 273 (3d Cir. 2020), which is attributable to the plaintiff, not the court.

[9] Plaintiffs cannot rely on *Scanlon v. DraftKings, Inc.*, No. 2484CV01099-BLS2 (Mass. Super. Ct. Aug. 21, 2024), which predates the Third Circuit's decision in *Antar*, and which did not analyze the issue in detail. Compare *Parnell v. FanDuel, Inc.*, 591 S.W.3d 315, 319 (Ark. 2019) (affirming dismissal of a consumer fraud claim related to a promotion promising a $200 deposit match because plaintiff did not allege he was prevented from withdrawing the $200 and could not plead that his account had "less economic value than represented . . .").

and lost) or any match they did not receive because they did not satisfy the Casino Promotion's playthrough requirements are inextricably tied to gambling losses, which are barred under *Antar*.

Plaintiffs' damages theories for the New Customer Promotion and Bonus Bet Promotions fail for the same reasons. Their benefit of the bargain argument as to the New Customer Promotion—that they suffered damages from simply "creating an account and making a deposit" (Resp. at 36)—is without merit, as Plaintiffs suffer no damages from depositing funds that they can withdraw. Plaintiffs' only alleged benefit of the bargain damages for the Bonus Bet Promotions is based on receiving a bonus bet instead of a cash refund, but that depends entirely on gambling losses (specifically, *losing* the initial wager). Had the bets ended differently—e.g., a team scored more runs—Plaintiffs would have suffered no loss even though *the allegedly deceptive Promotion would have been identical*. *See Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 360 (E.D. Pa. 2013) (noting that to state a claim under the UTPCPL, "[a] plaintiff must be able to point to money or property that he would have had *but for* the defendant's fraudulent actions.") (emphasis added).

### 5. Count Three Is Based on Non-Actionable Puffery.

In their opening brief, Defendants argued Plaintiffs could not base any claims on the term "No Sweat" because it is non-actionable puffery. Mem. at 33 (citing *Perri v. Prestigious Homes, Inc.*, No. L-4169-08, 2012 WL 95564, at *3 (N.J. Super. Ct. App. Div. Jan. 13, 2012) (discussing that a statement that "there wasn't anything to be concerned with"—similar to a potential colloquial meaning of "No Sweat"—is nonactionable puffery)). In their 50-page Response, Plaintiffs did not address the term "No Sweat" (or *Perri*),[10] and therefore have conceded and waived any argument as to that term. *Dreibelbis v. Scholton*, 274 F. App'x 183, 185 (3d Cir. 2008)

---

[10] All Plaintiffs say is that separate and apart from the term "No Sweat," DraftKings continued to use in its advertising "the dollar symbol." Resp. at 42 (citing Compl. ¶ 164, Fig. 6). But a dollar symbol does not make the phrase "No Sweat" any less vague.

(affirming district court's finding of waiver as to argument plaintiff chose not to address in opposition). Plaintiffs instead argue that another term—"Risk-Free"—is not puffery. However, the cases Plaintiffs cite actually *support* Defendants' position that "Risk-Free" is nonactionable puffery. *Doe A.F. v. Lyft, Inc.*, No. 23-3990-KSM, 2024 WL 3497886, at *8–9 (E.D. Pa. July 19, 2024) (statement of "safety for all" is non-actionable puffery); *Fusco v. Uber Techs., Inc.*, No. 17-00036, 2018 WL 3618232, at *7 (E.D. Pa. July 27, 2018) (the words "thorough[ ]," "rigorous," "robust," "safe[ ]," "reliable," and "you can trust" are non-actionable puffery) (alterations in original and citation omitted). Count Three should be dismissed as a matter of law.

### C. The Unjust Enrichment Claim (Count Seven) Should Be Dismissed.

Plaintiffs concede that their unjust enrichment claim rises and falls with their other claims. Resp. at 46-47. Because the other claims fail, the unjust enrichment claim must also be dismissed. This claim also fails because Plaintiffs participated in the Promotions and received the opportunity to earn winnings and rewards, which is "exactly what [they] thought [they were] purchasing—a gambling experience where winning was not guaranteed." *Antar*, 2025 WL 1219316, at *3.

### D. Plaintiffs Lack Standing.[11]

#### 1. Plaintiffs Lack Standing to Assert Claims Under the Laws of States Where No Named Plaintiff Is Located or Suffered Injury (Count One).

Plaintiffs lack standing to bring claims "under the unfair and deceptive trade practices statutes of the other states in which DraftKings has offered [the Casino] Promotion including Michigan, Connecticut, New Jersey, and West Virginia." Compl. ¶ 228. They do not dispute that they did not reside in those states and were not injured there. Indeed, they concede that cases in this District have ruled that "named plaintiffs . . . lack standing to bring claims on behalf of putative

---

[11] Plaintiffs sought injunctive relief in the Complaint (Compl. ¶¶ 225, 273, 290), but now "concede . . . that because they cannot be fooled again by Defendants' deception, they do not have standing to seek injunctive relief." Resp. at 47. All claims for injunctive relief should be dismissed.

classes under the laws of states where no named plaintiff is located and where no named plaintiff [suffered an injury]," and have dismissed claims on that basis. *In re Niaspan Antitrust Litig.*, No. 13-MD-2460, 2015 WL 8150588, at *3 (E.D. Pa. Dec. 8, 2015). Though Plaintiffs claim that *Neale* "strongly suggests" it would support Plaintiffs' out-of-state standing, (Resp. at 48), *Neale* never addressed this issue.[12] Furthermore, Plaintiffs have not shown that the laws of the other states are "materially the same" as and "largely parallel" to the Pennsylvania claims brought by Plaintiffs. *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 831 (E.D. Pa. 2019). Plaintiffs make no attempt to show that the success of their UTPCPL claims would "more or less dictate success" in Michigan, Connecticut, New Jersey, or West Virginia. *See Mayor & City Council of Baltimore v. Merck Sharp & Dohme Corp.*, No. 23-828, 2023 WL 8018980, at *11 (E.D. Pa. Nov. 20, 2023). Plaintiffs' identifying the existence of out-of-state consumer protection statutes in passing with no allegations *connecting* the statutes to the alleged conduct is insufficient to show the alleged similarities of those statutes. *Cf. id.* at *11 ("Plaintiff identifies the elements of a claim under each consumer statute and concisely connects those elements to its extensive allegations of anti-competitive conduct pled elsewhere."); *see also In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Pracs. Litig.*, 701 F. Supp. 2d 356, 378–79 (E.D.N.Y. 2010).

    **2.**    **Plaintiffs Lack Standing to Assert Claims Based on the No Sweat Promotion (Count Three).**

In their 50-page Response, Plaintiffs never claim that they saw advertisements for the No Sweat Promotion or that they enrolled in that promotion. They submit a chart indicating that two Plaintiffs entered into a "No-Risk Bet" promotion (in January and November 2020, respectively),

---

[12] *Davis v. Hanna Holdings, Inc.*, 771 F. Supp. 3d 552, 570 n.8 (E.D. Pa. 2025) ("*Neale* did not disturb the well-settled" requirements "that at least one named plaintiff must have Article III standing in order to assert claims on behalf of absent class members" and "that plaintiff[s] must establish standing individually with respect to each *claim* asserted.") (cleaned up).

(Resp. at 18), long *before* DraftKings began offering the No Sweat Promotion in late 2022. Compl. ¶ 177. Plaintiffs' argument that "Risk Free" and "No Sweat" advertisements are "essentially the same" is belied by their own allegations, including that the promotions had different titles ("Risk-Free" vs. "No Sweat"), ran at different times (*Cf.* Compl. ¶ 144 *with* ¶ 177), and had different advertisements with different appearances and disclosures (*Cf.* Compl. ¶ 147, Fig. 4 (Risk-Free Bet) *with* ¶ 164, Fig. 6 (No Sweat Bet)).[13]

### E. Plaintiffs' Group Allegations Are Improper.

Plaintiffs do not address the fundamental group pleading defect in the Complaint: they defined two "separately branded" entities collectively as "DraftKings" (Compl. at p. 1), causing substantial confusion as to what claims (and what allegations) are pled against which Defendants. Plaintiffs attempt to clarify that their claims against Golden Nugget are limited to those related to the Casino Promotion. However, they only add to the confusion by first claiming that those claims only include "Counts One and Two," and later claiming that those claims include Counts One, Two, and Seven. *Compare* Resp. at 7, n.2 *with id.* at 12. Even with those conflicting limitations, the claims still suffer from improper group pleading.[14] It does not matter that the Complaint contains "separate example advertisements" for DraftKings and Golden Nugget because Plaintiffs do not allege which, if any, of those advertisements they saw.

### III.  CONCLUSION

The Court should grant Defendants' motion and dismiss all claims without leave to amend.

---

[13] Plaintiffs cannot liken this case to consumer protection cases involving different products with *identical* labeling. *See, e.g.*, *Garner v. Glob. Plasma Sols. Inc.*, 590 F. Supp. 3d 738, 743 (D. Del. 2022); *Binakonsky*, 2022 WL 2757674, at *3.

[14] For example, they allege, "Plaintiff Harner created and funded his DraftKings and Golden Nugget Casino accounts and made bets on DraftKings's and Golden Nugget's Casinos. Plaintiff Harner lost approximately $57,000 on DraftKings over a few months." Compl. at ¶ 38. It is unclear whether Harner's purported losses relate to his accounts with DraftKings, Golden Nugget, or both.

Dated:  October 7, 2025     By: */s/  Melissa L. Perry*
                                           Michael J. Engle (PA ID  85576)
                                           Melissa L. Perry (PA ID 326984)
                                           STRADLEY RONON STEVENS & YOUNG, LLP
                                           2005 Market Street, Suite 2600
                                           Philadelphia, PA 19103
                                           Telephone: (215) 564-8000
                                           Email:    mengle@stradley.com
                                                           mperry@stradley.com

                                           Richard R. Patch (*admitted pro hac vice*)
                                           Clifford E. Yin (*admitted pro hac vice*)
                                           Laura Seegal (*admitted pro hac vice*)
                                           Nia Joyner (*admitted pro hac vice*)
                                           COBLENTZ PATCH DUFFY & BASS LLP
                                           One Montgomery Street, Suite 3000
                                           San Francisco, CA 94104
                                           Telephone: 415-391-4800
                                           Facsimile:  415-989-1663
                                           Email:    ef-rrp@cpdb.com
                                                           ef-cey@cpdb.com
                                                           ef-lrs@cpdb.com
                                                           ef-naj@cpdb.com

                                           *Attorneys for Defendants DraftKings Inc. (erroneously sued as "DraftKings, Inc."); Crown PA Gaming Inc. d/b/a DraftKings; Golden Nugget Online Gaming LLC*

12

## CERTIFICATE OF USE OF GENERATIVE AI

No portion of the brief, including legal or factual citations, was generated by any Generative AI program. ChatGPT was used only to assist in editing the brief. A person has checked the accuracy of all citations and legal authority.

## CERTIFICATE OF SERVICE

I, Melissa L. Perry, hereby certify that on October 7, 2025, I caused a true and correct copy of the foregoing to be served on all counsel of record by ECF.

*/s/Melissa L. Perry*
Melissa L. Perry