**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KENNETH MACEK, MATTHEW HARNER, AVI SETTON, LIONEL ALICEA, and ROBERT WALKER, *individually and on behalf of all others similarly situated,* | : : : : | Case No. 2:25-cv-3632 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| DRAFTKINGS, INC., CROWN PA GAMING INC. D/B/A DRAFTKINGS, GOLDEN NUGGET ONLINE GAMING LLC, | : : : | |
| Defendants. | : | |

**O P I N I O N**
**Motion to Dismiss, ECF No. 36 – Granted in part, Denied in part**
**Motion to Consolidate, ECF No. 37 – Denied**

**Joseph F. Leeson, Jr.**                                                                                     **April 8, 2026**
**United States District Judge**

## I.    INTRODUCTION

Plaintiffs Kenneth Macek, Matthew Harner, Avi Setton, Lionel Alicea, and Robert

Walker ("Plaintiffs") bring this action against Defendants DraftKings, Inc., Crown PA Gaming

Inc. d/b/a DraftKings, and Golden Nugget Online Gaming LLC (collectively, "DraftKings").

Plaintiffs allege that DraftKings' advertisements are deceptive and misleading, which caused

them to play longer hours and bet more money in pursuit of the Promotions. Plaintiffs bring

claims for intentional misrepresentation and deceptive or misleading conduct under

Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). DraftKings

has filed a Motion to Dismiss Plaintiffs' Complaint and a Motion to Consolidate the above-

captioned case with *Macek v. DraftKings, Inc.*, No. 5:25-cv-01995.[1] For the reasons that follow,

the Motion to Dismiss is granted in part and denied in part, and the Motion to Consolidate is

denied.

## II.    BACKGROUND

### A.    Factual Allegations

DraftKings began operating in Pennsylvania soon after the Supreme Court struck down

the Professional and Amateur Sports Protection Act.[2] *See* Compl. ¶ 52. Plaintiffs take issue with

three of DraftKings' promotions: The "Casino Deposit Match" Promotion, the "Risk-Free Bet"

Promotion, and the "$1,000 Sportsbook Deposit" Promotion. *See id.* ¶¶ 15–31.

#### 1.  Casino Deposit Match Promotion

Plaintiffs' first issue is with the Casino Deposit Match Promotion. *See id.* ¶ 100. The

Casino Deposit Match Promotion promises "to match 100% of a [player's] deposit up to $2,000

(or up to $1,000 on Golden Nugget)." *Id.* ¶ 102. Plaintiffs include numerous advertisements for

the Casino Deposit Match Promotion. *See id.* ¶¶ 103, Fig. 1 (DraftKings), 106, Fig. 2 (Golden

Nugget),[3] 107, Fig. 3 (DraftKings). The first advertisement does not mention terms and

conditions. *See id.* ¶¶ 103–04, Fig. 1. Similarly, advertisements on the DraftKings App did not

disclose the terms of the promotion. *See id.* ¶ 105. The subsequent advertisements include some

terms and conditions of the Casino Deposit Match Promotion, often with a hyperlink permitting

players to view the full terms and conditions. *See id.* ¶¶ 106, Fig. 2, 107, Fig. 3.

---

[1]    The Court dismissed that action on March 23, 2026, and transferred the two remaining claims to the Lehigh County Court of Common Pleas. *See* 5:25-cv-01995, ECF Nos. 44, 45.
[2]    *See Murphy v. NCAA*, 584 U.S. 453 (2018).
[3]    Golden Nugget has been a "wholly owned subsidiary" of DraftKings since May 2022. Compl. ¶ 42.

The Casino Deposit Match Promotion has "playthrough" requirements before players may recover their reward. *See id.* ¶ 108. "One television advertisement for the promotion that ran in 2023 promised customers a '100% deposit match up to $2,000' for playing blackjack on DraftKings' online casino without audibly disclaiming the existence of a playthrough requirement or the fact that blackjack contributes toward the requirement at only a 20% rate." *Id.* The playthrough requirement means players must wager approximately ten times the amount of the alleged bonus to receive the bonus.  *See id.* ¶ 111. For example, "to redeem a $2,000 bonus at a 10x playthrough requirement (a common DraftKings offer), a [player] would need to wager at least $40,000 (10x playthrough of BOTH the $2,000 deposit and the $2,000 bonus)." *Id.* The Casino Deposit Match Promotion has a 7-day window for players to satisfy the playthrough requirements. *See id.* ¶ 112. "[G]ames with the most favorable statistical returns to [players], like table games, contribute to the playthrough requirements at rates significantly lower than other casino games where [players] have a much lower chance of winning, like slot machines." *Id.* ¶ 114.  For example, "if a [player] bet $100 on a hand of blackjack, only $20 would count towards their playthrough requirement." *Id.* The terms provides the "Order of Funds for wagering" as follows: "(1) customer's initial qualifying deposited funds (the Original Deposit) are wagered first prior to casino bonus funds, (2) winnings accrued during the play-through of the Original Deposit, (3) bonus amount." *Id.* ¶ 119. If a player fails to complete the playthrough requirement within 7 days, the award becomes void, and a player forfeits all wagered and lost portion of the original deposit, casino bonus funds, and other accumulated winnings. *See id.* ¶ 121.

### 2. The Risk-Free Bet Promotion

DraftKings offers a Risk-Free Bet Promotion which tells players they can bet up to $1,000 without risk of losing money. *See id.* ¶ 142. If a bet is unsuccessful, the player could

receive a "Bonus Bet," rather than a cash refund. *Id.* ¶ 153. Bonus bets have no cash value, are not transferable, and could not be withdrawn on their own, but players must make additional wagers (and win) to turn them into U.S. currency. *See id.* ¶¶154–55. "[W]hen a customer places and wins a 'Bonus Bet,' they do not receive the stake back—which is what DraftKings purportedly gave them to make up for their loss." *Id.* ¶ 156 (cleaned up). If a player "uses a $100 'Bonus Bet' on a winning wager with 50/50 odds, they are paid out $91 ($100 winnings, minus 9% vig, without a return of the $100 stake)." *Id.* Yet, if a "Bonus Bet" loses, the player is left with nothing. *Id.* ¶ 157.

DraftKings advertised the Risk-Free Bet Promotion in Pennsylvania. *See id.* ¶ 164, Figs. 5, 6, 7. The relevant advertisements either place the terms and conditions in the advertisements, but in small print, or use a hyperlink permitting viewers to "View Full Terms." *Id.* When a player places a bet under the Risk-Free Bet Promotion, the terms and conditions are placed under a button with the letter, "i," without explaining what the "i" represented, or that the "i" contained a hyperlink to the terms and conditions of the Promotion. *See id.* ¶¶ 168, Fig. 8, 170, Fig. 9.

### 3. The $1,000 Sportsbook Deposit Promotion

DraftKings runs another Promotion which allegedly provides players a bonus of "up to" $1,000 upon opening an account. *Id.* ¶¶ 189, Fig. 11, 190, Fig. 12 (providing examples of the Promotion that provide hyperlinked terms and conditions, but proclaim, "Get a $1,000 Deposit Bonus!"). "[I]n order for a [player] to get a $1,000 bonus, they actually need to make an initial deposit of $5,000 in one lump sum (i.e. 5x the promised $1,000), and then risk $25,000 (i.e. 25x the initial deposit) on DraftKings sports bets within 90 days." *Id.* ¶ 194. Plaintiffs allege that DraftKings requires customers to make wagers on bets with minimum odds of -300, "meaning a bettor must risk $300 to win $100." *Id.* ¶¶ 195, 200, Figs. 13, 14, 15 (providing advertisements

of how potential players could "get a deposit bonus up to $1,000"). Furthermore, the "$1,000 bonus is not rewarded as withdrawable cash funds, but rather as site credits (i.e., 'DK Dollars') that hold no cash value, are non-withdrawable, non-transferable, non-refundable, and can only be used for further gambling." *Id.* ¶ 198. "[T]o receive a $1,000 bonus, [Plaintiffs] needed to immediately deposit $5,000 because the bonus amount is calculated as 20% of the consumer's first deposit." *Id.* ¶ 208. Players would only earn one site credit at a time per $25 wagered, meaning players could have to risk up to $25,000 within 90 days to earn the $1,000 bonus. *See id.* ¶¶ 208–09, 212.

### 4.  Plaintiffs' Allegations

Under Count I, Plaintiffs Macek, Setton, Alicea, and Harner allege that the Casino Deposit Match Promotion is deceptive or misleading, in violation of the UTPCPL. They allege that "[e]ven when these advertisements did include some terms, they were in very small[] print and did not include the most material terms regarding the [P]romotion." *Id.* ¶ 107. They allege that they "deposited money and opted into [the Casino Deposit Match Promotion] based on their reasonable belief that DraftKings would match their deposits." *Id.* ¶ 134. Setton created a DraftKings account for the Casino Deposit Match Promotion in summer 2020. *See id.* ¶¶ 39, 136. "Setton believed the large print promises in ads he saw for the promotion and did not ever see the fine-print terms that resulted in him losing his initial deposit." *Id.* ¶ 136. Harner began gambling on both DraftKings and Golden Nugget in mid-2024 after seeing the Promotions which were "substantially identical to those described above." *See id.* ¶¶ 38, 137. Alicea began gambling on Golden Nugget and DraftKings in May and June 2024, respectively, after seeing the Casino Deposit Match Promotion on email and on his social media feeds. *See id.* ¶¶ 40, 138. Alicea allegedly believed that he could not lose money because his deposits would be matched upon

making a deposit. *See id.* ¶ 139. Macek entered the Promotion in 2020 but did not realize he had to complete the playthrough requirement, and forfeited his winnings. *See id.* ¶¶ 37, 140.

Second, in Count III, Macek and Walker[4] challenge the Risk-Free Bet Promotion. "None of the advertisements clearly disclose all of the material terms" of the Promotion. *Id.* ¶ 166. "[T]he link to the terms of the [P]romotion are not even made available to a [player] until after the customer has already logged into the platform in response to an off-platform advertisement for the promotion and clicked through several steps to get to the point of placing the supposedly no-risk bet." *Id.* ¶ 167. They aver that they "were misled into thinking that they could bet without risk, and then ended up losing all of their initial stake." *Id.* ¶ 183. Macek contends that he was "surprised and dismayed" to learn that he had to place more wagers after he lost the bet just to try to win back some of the money he lost. *Id.* ¶ 184. Macek and Walker allege that had they known that the bets were not risk-free, "they would have acted differently." *Id.* ¶ 185.

Third, in Count IV, regarding the $1,000 Sportsbook Deposit Promotion, Macek and Walker maintain that the terms of the Promotion appear in an "illegibly small" font size on advertisements or are nonexistent. *Id.* ¶ 204. Macek and Walker "transferred money into their DraftKings accounts anticipating that their deposit would be 'matched' in full up to $1,000." *Id.* ¶ 205. They allege that they "relied on and were deceived by the representations in this offer and in similar advertisements when they created accounts and made deposits on the DraftKings Sportsbook to obtain the promised $1,000 bonus," and "would not have created accounts on DraftKings or deposited and lost as much money had they not relied on and been deceived by the

---

[4]    Some parts of the Complaint provide that Setton challenges the Risk-Free Bet Promotion, *see* Compl. ¶¶ 144, 148, 169, 180, 183, 185, and the $1,000 Sportsbook Deposit Promotion, *see* Compl. ¶¶ 191, 201, 202, 205, 206, 208, 209, 210, 211, 212. Later in the Complaint, and in the Response brief, ECF No. 42, Plaintiffs allege that only Macek and Walker challenge these Promotions. The Court presumes that such allegations relate only to Macek and Walker.

misleading statements[.]" *Id.* ¶ 192. Additionally, they failed to complete the playthrough requirements applicable to the Promotion. *See id.* ¶ 212.

Fourth, in Count II, Harner and Alicea allege DraftKings intentionally misrepresented the Casino Deposit Match Promotion. They allege that the DraftKings "knew these representations were false and made them intentionally with the intention that [players] like Plaintiffs [] would rely on them in signing up for the [P]romotion." *Id.* ¶ 248.[5]

In addition, in Count VII, the unjust enrichment claim, all Plaintiffs argue that "DraftKings was unjustly enriched as a result of its wrongful conduct, including through the promises that: (i) DraftKings would give [players] an amount equal in U.S. dollar value to their deposit when they opted into the Casino and Sportsbook Deposit Match Promotions; (ii) customers could cancel the Casino Deposit Match Promotion without losing their initial deposit; and (iii) that certain bets on DraftKings could be placed at no-risk to the [player]." *Id.* ¶ 321.

**B.  Procedural History**

Plaintiffs filed the present Complaint on July 15, 2025. *See* ECF No. 1. Count I is a UTPCPL claim based upon the Consumer Deposit Match Promotion. Count II is an intentional misrepresentation claim based upon the Consumer Deposit Match Promotion. Count III is a UTPCPL claim based upon the Risk-Free Bet Promotion. Count IV is a UTPCPL claim based upon the $1,000 Sportsbook Deposit Promotion. Count V is an intentional misrepresentation claim based upon the Risk-Free Bet Promotion. Count VI is an intentional misrepresentation claim based upon the $1,000 Sportsbook Deposit Promotion. Count VII is an unjust enrichment claim based upon all prior claims.

---

[5]  Macek and Walker raise intentional misrepresentation claims as to the Risk-Free Bet Promotion (Count V) and the $1,000 Sportsbook Deposit Promotion (Count VI) but conceded that they were time-barred. *See*, *infra*, Resp. 43 n.22, ECF No. 42.

DraftKings filed a Motion to Dismiss on September 16, 2025. *See* ECF No. 36. DraftKings also filed a Motion to Consolidate this case with 5:25-cv-1995. *See* ECF No. 37 and n.1, *supra*.

Plaintiffs filed a Response in Opposition to the Motion to Dismiss on September 30, 2025. *See* ECF No. 41 (first Response), ECF No. 42 (corrected Response, called "Resp."). Plaintiffs conceded that many of their intentional misrepresentation claims are time-barred. *See* Resp. 43, n.22, ECF No. 42 ("[A]s both Macek and Walker participated in the $1,000 Sportsbook Deposit Promotion and the No-Risk Promotion in 2020, the fraudulent misrepresentation claims (Counts V and VI) challenging those two promotions are time barred."). Also, Plaintiffs conceded that the two-year statute of limitations ran on Macek's and Setton's claims under Count II. *See id.*

DraftKings filed a Reply on October 7, 2025. *See* ECF No. 44.

The parties submitted supplemental authorities in support of their arguments. *See* ECF Nos. 46-1 (providing the Northern District of Illinois' opinion in *Beyer v. DraftKings, Inc.*), 46-2 (providing the District of New Jersey's opinion in *Youngs v. DraftKings, Inc.*), 47 (providing the Southern District of New York's opinion in *De Leon v. DraftKings, Inc.*), 48–49 (providing the Massachusetts Superior Court's decision in *Scanlon v. DraftKings, Inc.*). DraftKings submitted its opposition to the use of the Massachusetts Superior Court's decision. *See* ECF No. 50.

## III.   LEGAL STANDARDS

### A.   Motion to Dismiss for Failure to State a Claim – Review of Applicable Law

Under Rule 12(b)(6), the court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d

Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense").

The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) (holding that "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (holding that "a document integral to or explicitly relied upon in the complaint may be considered" (internal quotations omitted)). Courts may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims

are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

      **B.      Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL")**

The UTPCPL provides a private cause of action to allow,

> [a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, [to] bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater.

73 Pa. S.A. § 201-9.2(a). The UTPCPL's causation requirement "demand[s] a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 (3d Cir. 2008) (citing *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (2001) (explaining that the UTPCPL requires a plaintiff to allege that he purchased the product because he heard and believed the defendant's false advertisement)). Subsection (v) of the UTPCPL defines as prohibited conduct "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have." 73 P.S. § 201-2(4)(v); *see also Commw. by Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1028 (Pa. 2018). Subsection (xxi) of the UTPCPL (the "catch-all" provision) prohibits "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi); *see also Golden Gate*, 194 A.3d at 1028.

     The UTPCPL prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." *McMahon v. Chipotle Mexican Grill, Inc.*, Nos. 24-1883 & 24-2042, 2025 WL 1604501, at *4 (3d Cir. June 6, 2025) (citing 73 Pa. C.S. §

201-3). The UTPCPL is a remedy for individual consumers wronged by unfair trade practices, so courts should liberally construe its provisions to protect consumers. *See Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 881 (Pa. 2007).

"The elements of a [UTPCPL] deception claim are: (1) 'a deceptive act,' meaning 'conduct that is likely to deceive a consumer acting reasonable under similar circumstances'; (2) 'justifiable reliance [based on] the defendants' misrepresentation or deceptive conduct'; and (3) an 'ascertainable loss' caused by this justifiable reliance." *Landau v. Viridian Energy*, 223 F. Supp. 3d 401, 418 (E.D. Pa. 2016) (citing *Vassalotti v. Wells Fargo Bank. N.A.*, 732 F. Supp. 2d 503, 510–11 (E.D. Pa. 2010)). "An act or a practice is deceptive or unfair if it has the capacity or tendency to deceive[,]" but "[n]either the intention to deceive nor actual deception must be proved; rather, it need only be shown that the acts and practices are capable of being interpreted in a misleading way." *Commw. ex rel. Corbett v. Peoples Benefit Servs., Inc.*, 923 A.2d 1230, 1236 (Pa. Commw. Ct. 2007) (citations and internal quotations omitted). To prevail, a plaintiff must prove that he "justifiably relied upon the unfair or deceptive business practice when making the purchasing decision." *McMahon*, 2025 WL 1604501, at *5 (citing *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021)). "[T]o prove justifiable reliance on 'deceptive conduct during a consumer transaction that creates a likelihood of confusion or misunderstanding,' he must show that he relied on that conduct 'to his ... financial detriment.'" *McMahon*, 2025 WL 1604501, at *5 (citing *Gregg*, 245 A.3d at 649–50).

"Justifiable reliance at the 'motion to dismiss stage requires a two-step analysis. First, the Court must extract all factual assertions from the [] Complaint, viewing such facts in the light most favorable to the Plaintiffs and drawing all reasonable inferences in Plaintiffs' favor.'" *Fike v. Glob. Pharma Healthcare Priv., Ltd.*, 741 F. Supp. 3d 265, 279 (E.D. Pa. 2024) (citing *Walkup*

*v. Santander Bank, N.A.*, 147 F. Supp. 3d 349, 359 (E.D. Pa. 2015) (internal quotations omitted)). "Then, the court must 'assess whether these factual allegations, if true, provide plausible support for a legal claim for relief.'" *Id.*

Pennsylvania law "holds that a plaintiff can state a claim under the catch-all provision by pleading facts sufficient to support a claim for fraud or deception." *Landau*, 223 F. Supp. 3d at 418 (citations omitted). "Unlike fraud claims, deception claims are not subject to Rule 9(b) and need only comply with the pleading requirements imposed by Rule 8(a)." *Id.* (citing *Slemmer v. McGlaughlin Spray Foam Insulation*, 955 F. Supp. 2d, 452, 463 (E.D. Pa. 2013); *Fazio v. Guardian Life Ins. Co. of Am.*, 62 A.3d 396, 405–06 (Pa. Super. Ct. 2012)).

## C.    Puffery

Where the impression created by the statement is one of exaggeration or overstatement expressed broadly, "it may be deemed non-actionable puffery." *Golden Gate*, 194 A.3d at 1023 (citing *Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 945 (3d Cir. 1993)). There are two categories of puffery. *See Golden Gate*, 194 A.3d at 1023. "The first involves hyperbolic boasting or bluster that no reasonable consumers would believe to be true; for example, a statement that a weight loss product will cause the pounds to 'melt away in the blink of an eye.'" *Id.* (citing 5 McCarthy on Trademarks and Unfair Competition § 27:38 (5th ed.)). "The second category involves claims of superiority over a competitor's product, *id.*, such as statements that a laboratory imaging device provided 'unprecedented clarity,' or the advertisement of a product as 'the complete sports drink.'" *Golden Gate*, 194 A.3d at 1023 (citing *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F. Supp. 2d 296, 300–01 (D. Neb. 1998); *Stokely-Van Camp, Inc. v. Coca-Cola Co.*, 646 F. Supp. 2d 510, 526 (S.D. N.Y. 2003)). Statements are "puffery" when consumers "understand that

the statements are not to be taken literally." *Golden Gate*, 194 A.3d at 1023. The law presumes that

> [t]here are some kinds of talk which no sensible man takes seriously, and if he does he suffers from his credulity. If we were all scrupulously honest, it would not be so; but, as it is, neither party usually believes what the seller says about his own opinions, and each knows it. Such statements ... are rather designed to allay the suspicion which would attend their absence than to be understood as having any relation to objective truth.

*Id.* at 1023–24 (citing *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1106 (10th Cir. 2009) (quoting *Vulcan Metals Co. v. Simmons Mfg. Co.*, 248 F. 853, 856 (2d Cir. 1918)). Contrastingly, "where a plaintiff establishes that a statement contains believable, inaccurate statements of fact, the statement falls beyond the reach of a puffery defense." *Golden Gate*, 194 A.3d at 1024 (citing Vincent N. Palladino, *Lanham Act "False Advertising" Claims: What Is A Plaintiff to Do?*, 101 Trademark Rep. 1601, 1668 (2011)). Whether a statement is puffery "is a question of fact to be resolved by the finder of fact except in the unusual case where the answer is so clear that it may be decided as a matter of law." *Golden Gate*, 194 A.3d at 1024 (external citations omitted).

### D.    Heightened Pleading Standard – Fraud

Under Rule 9(b), the "party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b). "Under that standard, the complaint must describe the time, place, and contents of the false representations or omissions, as well as the identity of the person making the statement and the basis for the statement's falsity." *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023).

"While it will usually be necessary to plead the 'time, place and content of the misrepresentation and damages' to satisfy the specificity requirement of Rule 9(b), all that is required is to put the defendant on notice of the claims to which a response is necessary." *Benevento v. LifeUSA Holding, Inc.*, 181 F.R.D. 298, 301 (E.D. Pa. 1998) (citing *Republic Env't*

13
040826

*Sys., (PA), Inc. v. Reichhold Chem., Inc.*, 154 F.R.D. 130, 132 (E.D. Pa. 1994)). If the defendant can prepare an adequate answer to the complaint, the requirements of Rule 9(b) have been met. *See Republic,* 154 F.R.D. at 132; *Denny v. Carey,* 72 F.R.D. 574, 578 (E.D. Pa. 1976). "[C]ourts have relaxed Rule 9(b)'s particularity requirement when factual information is peculiarly within the defendant's knowledge or control." *Benevento*, 181 F.R.D. at 301 (citations omitted).

  E.  **Intentional Misrepresentation – Review of Applicable Law**

  "The elements of intentional misrepresentation are as follows: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and, (6) the resulting injury was proximately caused by the reliance." *Lind v. Jones, Lang LaSalle Ams., Inc.*, 135 F. Supp. 2d 616, 620 (E.D. Pa. 2001) (citing *Bortz v. Noon*, 729 A.2d 555, 560 (3d Cir. 1999)).

  F.  **Unjust Enrichment – Review of Applicable Law**

  "To state a claim for unjust enrichment under Pennsylvania law, the plaintiff must allege that (1) he conferred a benefit on the defendant, (2) the defendant knew of the benefit and accepted or retained it, and (3) it would be inequitable to allow the defendant to keep the benefit without paying for it." *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 492 (E.D. Pa. 2016) (citing *Mitchell v. Moore*, 729 A.2d 1200, 1203–04 (Pa. Super. Ct. 1999)); *see also Greenwald Caterers Inc. v. Lancaster Host, LLC*, 599 F. Supp. 3d 235, 262 (E.D. Pa. 2022) (citing *Argue v. Triton Digital Inc.*, 734 F. App'x 148, 151 (3d Cir. 2018) (quoting *Mark Hershey Farms, Inc. v. Robinson*, 171 A.3d 810, 817 (Pa. Super. Ct. 2017))). To plead unjust enrichment in a tort claim, the plaintiff must plead facts demonstrating the damages from the tort "could be supported by a theory of unjust enrichment." *Whitaker*, 198 F. Supp. 3d at 492–93 (citing *Zafarana v. Pfizer,*

*Inc.*, 724 F. Supp. 2d 545, 561 (E.D. Pa. 2010)). "To sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either 'wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.'" *Whitaker*, 198 F. Supp. 3d at 493 (citing *Torchia v. Torchia*, 499 A.2d 581, 582 (Pa. Super. Ct. 1985) (quoting *Roman Mosaic & Tile Co. v. Vollrath*, 313 A.2d 305, 307 (Pa. Super. Ct. 1973)).

## IV.    ANALYSIS

In their seven-count Complaint, Plaintiffs allege that all three of DraftKings'[6] Promotions—the Casino Deposit Match Promotion, the Risk-Free Bet Promotion, and the $1,000 Sportsbook Deposit promotion—violate the UTPCPL and that DraftKings intentionally misrepresents such Promotions. The Court finds that Plaintiffs plausibly plead the first two elements of a UTPCPL claim (that the advertisements for all three Promotions, Counts I, III, and IV, could be capable of being deceptive or misleading and that Plaintiffs justifiably relied on the advertisements).[7] Plaintiffs also plausibly plead ascertainable loss with respect to the Risk-Free

---

[6]    The Court notes that all allegations referring to Defendant Golden Nugget in Counts I and II are not impermissible group pleading because the Complaint contains separate example advertisements for both DraftKings and Golden Nugget. *See* Compl. ¶¶ 103, Fig. 1 (DraftKings), 106, Fig. 2 (Golden Nugget), 107, Fig. 3 (DraftKings). There is no impermissible group pleading because Plaintiffs make such allegations to both DraftKings and Golden Nugget. *See Milo, LLC v. Procaccino*, No. 16-5759, 2020 WL 1853499, at *10–11 (E.D. Pa. Apr. 13, 2020) (finding that the complaint provided adequate notice to all defendants about their separate conduct).

[7]    Plaintiffs allege that the terms and conditions of the three Promotions were either in very small print or were never shown to Plaintiffs before depositing money. Specifically, one of the Casino Deposit Match Promotion advertisements, *see* Compl. ¶ 103, Fig. 1, fails to include the terms and conditions of the Promotion. Some of the advertisements for all three Promotions included terms and conditions of the product or included a hyperlink to look at the terms and conditions. Yet, the question before the Court is whether the advertisements are *capable* of deceiving Plaintiffs. *See Chiles v. Ameriquest Mortg. Co.*, 551 F. Supp. 2d 393, 399 (E.D. Pa. 2008) (quoting *Christopher v. First Mut. Corp.*, No. 05-1149, 2006 WL 166566, at *4 (E.D. Pa. Jan. 20, 2006) ("'An act or practice is deceptive or unfair if it has the capacity or tendency to deceive.'")). The Court finds that Plaintiffs plausibly plead the first element of a UPTCPL claim because the advertisements are capable of deceiving Plaintiffs. *See Lisowski v. Henry Thayer Co., Inc.*, 501 F. Supp. 3d 316, 336–37 (W.D. Pa. 2020) (denying a motion to dismiss a UTPCPL

Bet Promotion. [8]  Yet, Plaintiffs do not plausibly plead ascertainable loss with regard to the

Casino Deposit Match Promotion or the $1,000 Sportsbook Deposit Promotion. The Court

dismisses Counts I and IV.

---

claim because the company's marketing the product as "preservative-free," although it contained the ingredients on the back, was "capable of confusing or misleading the consumer"); *see also Binakonsky v. JM Brands, Inc.*, No. 21-444, 2022 WL 2757674, at *4–5 (W.D. Pa. July 14, 2022) (denying a motion to dismiss a UTPCPL claim and noting "that a reasonable consumer might be misled by the [corporation's] labeling, particularly given the prominence of the 'natural' labeling and imagery on the front of the bottle[,]" and "[i]t certainly is plausible that the average consumer relies heavily on prominent labels on the front of a product and does not scrutinize the fine-print list of ingredients on the back"); *see, e.g.*, *Landau*, 223 F. Supp. 3d at 419 ("[The Court] find[s] it deceptive for Viridian to make bold assurances and then hide behind fine print disclaimers.").

Plaintiffs also plausibly plead justifiable reliance for all three Promotions. Regarding the Casino Deposit Match Promotion, Plaintiffs Macek, Setton, Alicea, and Harner allege that they deposited money and opted into the Promotion because they believed that DraftKings would match their deposits. *See* Compl. ¶ 134. With regard to the Risk-Free Bet Promotion, Plaintiffs Macek and Walker maintain that they believed that they could bet without risk and lost all of their initial stake. *See id.* ¶ 183. Considering the $1,000 Sportsbook Deposit Promotion, Plaintiffs Macek and Walker maintain that they transferred money into their DraftKings accounts believing that they would obtain the $1,000 deposit bonus. *See id.* ¶ 192. At this early stage of the case, the Court finds these allegations sufficient to proceed to discovery. *See Hunt*, 538 F.3d at 222 n.4 ("A justifiable-reliance requirement ... requires the plaintiff ... [to] show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation.").

Whether DraftKings' statements comprise non-actionable puffery, as they argue in the Motion to Dismiss, is a question of fact inappropriate for resolution at this early stage of the litigation. *See Golden Gate*, 194 A.3d at 1024 (holding that whether a statement is non-actionable puffery is generally a question of fact unless "the answer is so clear" that the statement is puffery).

[8]     The Court notes that the losses suffered from the Risk-Free Bet Promotion differ from the other two Promotions because there was no playthrough requirement, and Plaintiffs lost a refund of their initial bets for which they were promised a refund. Macek and Walker allegedly lost unreceived "cash refunds for bets they placed and lost." *Id.* ¶ 268. The Bonus Bets that they received are not transferrable and have no cash value. Furthermore, after a player wagers the Bonus Bet and wins, the player gets less money than had the player bet with cash. If the player loses the Bonus Bet, the player is left with nothing. Since Macek and Walker plead that they lost their initial deposits by betting with the Bonus Bet, they plausibly plead ascertainable loss. *See J. Ambrogi Food Distrib., Inc. v. Teamsters Loc. Union No. 929*, 595 F. Supp. 3d 352, 358 (E.D. Pa. 2022) ("[P]laintiffs need not plead the exact dollar amount of their loss. Instead, plaintiffs must provide enough specificity to give defendants notice of their possible damages.") (citations omitted).

In addition, Plaintiffs concede that Counts V and VI, as well as Macek's and Setton's intentional misrepresentation claims under Count II of the Complaint, are time-barred. The Court dismisses Counts V and VI and dismisses Macek's and Setton's claims under Count II.

Thus, with regard to the intentional misrepresentation claims, the Court only considers Harner's and Alicea's claims in Count II. The Court finds that Harner fails to meet Rule 9(b)'s pleading standard and thus fails to state a claim for intentional misrepresentation. However, the Court finds that Alicea's allegations of intentional misrepresentation may proceed to discovery.

### A.    UTPCPL – Ascertainable Loss

Plaintiffs do not plausibly plead ascertainable loss regarding either the Casino Deposit Match Promotion or the $1,000 Sportsbook Deposit Promotion. To maintain a private right of action under the UTPCPL, a plaintiff must demonstrate "(1) 'ascertainable loss of money or property, real or personal,' 73 P.S. § 201–9.2(a), (2) 'as a result of' the defendant's prohibited conduct under the statute." *Kaymark v. Bank of Am.*, N.A., 783 F.3d 168, 180 (3d Cir. 2015) (citing *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004)).

Plaintiffs fail to plead ascertainable loss regarding the Casino Deposit Match Promotion and the $1,000 Sportsbook Deposit Promotion. Plaintiffs allege that they lost money under both Promotions after they failed to complete the Promotions' playthrough requirements. Yet, such losses are inherently speculative, because they arise solely as a result of failing to comply with the Promotion's terms. Under Pennsylvania's UTPCPL, "[h]ypothetical losses cannot be the basis of a claim[.]" *Ober v. Ocwen Fin. Corp.*, No. 19-01171, 2020 WL 1891838, at *4 (M.D. Pa. Apr. 16, 2020). Plaintiffs fail to plead additional facts that their losses were anything more than hypothetical. At this early stage of the case, the Court dismisses Counts I and IV for failure to plead ascertainable loss.

B.      Intentional Misrepresentation

The Court finds that Harner fails to state a claim for intentional misrepresentation, but Alicea pleads sufficient allegations to permit his intentional misrepresentation claim to proceed to discovery.

First, Harner alleges that he saw Casino Deposit Match Promotion advertisements in mid-2024 that were nearly identical to those presented in the Complaint. *See* Compl. ¶ 137. Yet, Harner fails to plead *where* he saw the advertisements. Harner's intentional misrepresentation claim fails because he fails to plead "the time, place, and contents" of the alleged misrepresentations. *City of Warren*, 70 F.4th at 680 (providing the requirements to plead a fraud claim with specificity under Rule 9(b)).

Second, Alicea pleads that he saw Casino Deposit Match Promotion advertisements on social media in May and June of 2024. Pursuant to Rule 9(b), Alicea pleads the time (May and June 2024), place (social media), and contents (the Casino Deposit Match Promotion) of the allegedly false representations (how much money he could win), as well as the identity of the person making the statement (DraftKings) and the basis for the statement's falsity (the playthrough requirements). *See* Compl. ¶¶ 138–39. Thus, Alicea meets Rule 9(b)'s heightened pleading standard. *See City of Warren*, 70 F.4th at 680. Alicea likewise pleads that the advertisements were misleading because they included terms and conditions in small print, lacked terms and conditions in some advertisements, and did not require players to read the terms before making deposits. *See* Compl. ¶ 134. Alicea's allegations are sufficient to permit his intentional misrepresentation claim to proceed to discovery.

The Court dismisses Harner's claim under Count II but does not dismiss Alicea's claim under Count II.

## C.    Unjust Enrichment

Plaintiffs state an unjust enrichment claim regarding the remaining intentional misrepresentation claim and the UTPCPL claim with regard to the Risk-Free Bet Promotion. This Court has dismissed Plaintiffs' UTPCPL claims based on the Casino Deposit Match Promotion and the $1,000 Sportsbook Deposit Promotion. "Where the unjust enrichment claim rests on the same improper conduct as the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying claim." *Whitaker*, 198 F. Supp. 3d at 493 (citing *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 171 F.3d 912, 937 (3d Cir. 1999)). As to the UTPCPL claims based on the Casino Deposit Match Promotion and the $1,000 Sportsbook Deposit Promotion (Counts I and IV), the unjust enrichment claims are dismissed under Count VII. As to the intentional misrepresentation claim and the UTPCPL claim with regard to the Risk-Free Bet Promotion (Counts II and III), the Court does not dismiss the unjust enrichment claims under Count VII.

## D.    Amending Pleadings

"When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *Alston v. Parker*, 363 F.3d 229, 236 (3d Cir. 2004). The Court dismisses Count I, Harner's claim under Count II, and Count IV without prejudice.

## V.    CONCLUSION

For the foregoing reasons, the Court grants the Motion to Dismiss in part and denies the Motion to Dismiss in part. The Court dismisses Counts I and IV without prejudice. The Court dismisses Plaintiff Harner's claim under Count II without prejudice. The Court dismisses Counts

V and VI as time-barred. The Court likewise dismisses Plaintiffs Macek and Setton's claims under Count II as time-barred. The Court denies the Motion to Dismiss with respect to Count III, Plaintiff Alicea's claim under Count II, and Count VII. The Court denies the Motion to Consolidate the case with 5:25-cv-01995 (*Macek v. DraftKings, Inc.*) because that case is now closed.

A separate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge